UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-81088-MIDDLEBROOKS/MATTHEWMAN

CHRISTINE FERRIGAN,

    Plaintiff,

v.

CITY OF DELRAY BEACH, FLORIDA,
TERRENCE MOORE and HASSAN
HADJIMIRY,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Defendants, City of Delray Beach ("City"), Terrence Moore ("Moore"), and Hassan Hadjimiry ("Hadjimiry") (collectively "Defendants") move for summary judgment, pursuant to Rule 56, Fed. R. Civ. P., and Local Rule 56.1, S.D. Fla. L.R., as to all remaining claims raised in the Complaint [ECF No. 1], filed by Plaintiff, Christine Ferrigan ("Plaintiff"), and state as follows:[1]

### OVERVIEW

    Plaintiff's Complaint stems from her employment with the City as an Industrial Pretreatment Program Inspector ("IPP Inspector") in the City's Public Utility Department, which ended on January 26, 2022 because of a reorganization of the Department. The common theme of the Complaint is that the City, Moore, and Hadjimiry each retaliated against Plaintiff for her participation in investigations by the Florida Department of Health ("DOH") and the Office of Inspector General ("OIG") and her public statements concerning the City's reclaimed water program. Specifically Plaintiff was involved in identifying deficiencies in the City's reclaimed

---

[1]     Pursuant to S.D. Fla. L.R. 56.1(a), Defendants are filing a separate Statement of Material Facts contemporaneously herein. The facts upon which each argument relies will be cited as "Facts, ¶__."

water program and, following these investigations, the City admitted to the deficiencies and committed to rectifying them in a consent decree with the DOH in or around November 2021.

The remaining claims[2] consist of a First Amendment retaliation claim, pursuant to Section 1983 against all Defendants (Count I); a state law retaliation claim, pursuant Article I, section 4 of the Florida Constitution against all Defendants (Count II); and an alleged violation of Florida's Public Whistleblower's Act, section 112.3187, Fla. Stat. ("PWA") against the City (Count III). Specifically, the Complaint alleges that the termination of the IPP position, as well as Plaintiff's failure to obtain either of two other employment positions for which she applied, were retaliatory.

As set forth herein, Defendants are entitled to summary judgment on all of remaining claims. Specifically, Plaintiff cannot meet the elements of a First Amendment or Florida constitutional free speech claim. Plaintiff, notably, has also failed to meet the stringent test of *Monell*. As to the PWA claim, moreover, there is undisputed evidence reflects the City had legitimate, non-discriminatory reasons for Plaintiff's adverse employment action, which were not pretextual. As to the individual defendants, specifically, they are entitled to qualified immunity as to Count I and sovereign immunity as to Count II, in addition to the reasons said claims fail as a matter of law against the City.

## ARGUMENT
## THE CLAIMS AGAINST THE CITY – COUNTS I, II, AND III[3]
### I. THE SPEECH RETALIATION CLAIM FRAMEWORK UNDER THE FEDERAL

---

[2] The Court granted Defendants' motion to dismiss in part, dismissing Count III against Moore and Hadjimiry. ECF No. 47.

[3] Defendants note that Plaintiff has sued Moore and Hadjimiry in both their individual and official capacities in Counts I and II. It is well settled under both Supreme Court and Eleventh Circuit precedent that a suit against a municipality and a municipal official in his or her official capacity is duplicative. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials because local government units can be sued directly."). Accordingly, Defendants treat the claims against Moore and Hadjimiry in their official capacities in Counts I and II as functionally equivalent of the claims against the City.

**AND STATE CONSTITUTION.**[4]

To succeed on a First Amendment retaliation claim in the context of public employment, a plaintiff must show "that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016).

When analyzing the second element, a court considers "whether the challenged conduct would, objectively, chill or deter the exercise of constitutionally protected speech." *Bell v. Sheriff of Broward Cnty.*, 6 F.4th 1374, 1379 (11th Cir. 2021). As to the third prong, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (explaining a retaliatory motive must have caused the injury to the plaintiff) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Id.* "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* This "but-for cause" "may be accomplished with proof of: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory act, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1405 (S.D. Fla. 2014) (citations omitted); *see also Nieves*, 139 S. Ct. at 1722 (2019) (explaining a retaliatory motive must have caused the injury to the plaintiff).

---

[4] The First Amendment claim and free speech claim under the Florida constitution are analyzed under the same rubric. "Florida courts have equated the scope of the Florida Constitution with that of the Federal Constitution in terms of the guarantees of freedom of speech ...." *Dickerson v. Stuart*, 877 F. Supp. 1556, 1559 n.1 (M.D. Fla. 1995) (citing *Florida Canners Ass'n v. State, Dep't of Citrus,* 371 So.2d 503 (Fla. 1979)); *O.P-G. v. State*, 290 So. 3d 950, 955 n.4 (Fla. 4th DCA 2019) ("The scope of the protection accorded to freedom of expression in Florida under article I, section 4 is the same as is required under the First Amendment."). Thus, "the principles of freedom of expression as announced in the decisions of the Supreme Court of the United States" are applicable to Count II. *Dep't of Educ. V. Lewis*, 416 So. 2d 455, 461 (Fla. 1982). Accordingly, Defendants analyze the Florida constitutional free speech claim in Count II in conjunction with the First Amendment claim in Count I.

## II. THE PWA FRAMEWORK.

The PWA prohibits an employer from taking a retaliatory action against an employee "who reports to an appropriate agency violations of law on the part of a public employer ... that create a substantial and specific danger to the public's health, safety, or welfare." Fla. Stat. § 112.3187(2). In analyzing a retaliation claim under the PWA, courts use the Title VII burden-shifting method of proof, articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Sierminski v. Transouth Fin. Corp.,* 216 F.3d 945, 950 (11th Cir. 2000). To establish a violation of the FWA, an employee must show that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there existed a causal connection between the two events. *Castro v. Sch. Bd. of Manatee Cnty., Fla*., 903 F. Supp. 2d 1290, 1302 (M.D. Fla. 2012) (citing *Fla. Dept. of Children and Families v. Shapiro,* 68 So.3d 298 (Fla. 4th DCA 2011)).

"Once the plaintiff has made out the elements of the prima facie case of discrimination, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action." *Springer v. Convergys Customer Mgmt. Group, Inc.,* 509 F.3d 1344, 1347 (11th Cir. 2007) (citation omitted). The Eleventh Circuit has held that "this burden is exceedingly light and that the employer need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Robinson v. Adventist Health System*, 259 Fed. Appx. 245, 247 (11th Cir. 2007) (internal quotations and citation omitted).

If the employer produces legitimate reasons for its employment actions, the burden shifts back to the plaintiff to prove that the reasons are pretextual. To establish pretext, the plaintiff must meet the employer's reason head on and rebut it. *Ramsey v. Broward Cty. Sheriff's Office,* 303 Fed. Appx. 761, 765 (11th Cir. 2008). Plaintiff must reveal "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer,* 509 F.3d at 1348-49; *see also Jackson v. State of Ala. Tenure Comm*., 405 F.3d 1276, 1289(11th Cir. 2006). "[She] may succeed in this either directly by persuading the court that a discriminatory reason more than likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson*, 405 F.3d at 1289.

Nevertheless, "a court should not second-guess the business judgment of employers; in other words, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where . . . the reason is one that

might motivate a reasonable employer." *Ramsey*, 303 Fed. App'x at 765. "A reason is not pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." *Springer,* 509 F.3d at 1349 (internal quotations and citations omitted).

### III. THE UNDISPUTED FACTS REFLECT PLAINTIFF CANNOT STATE A RETALIATION OR PWA CLAIM AS A MATTER OF LAW.

Defendants recognize that constitutional retaliation claims and the PWA claim are analyzed using different terms of art. Under either framework, however, the same, undisputed facts reflect that Plaintiff cannot demonstrate a causal connection between the adverse employment action and her protected activities. Moreover, Plaintiff cannot prove pretext based on these same facts. Accordingly, the City submits that the facts, set forth below, reflect summary judgment is merited in the City's favor as to Counts I, II, and III.

#### a. *The City Has Legitimate Reasons for the Alleged Adverse Employment Actions That Are Not Pretextual.*

For the purposes of this Motion only, the City does not dispute Plaintiff engaged in statutorily protected activity and that she suffered an adverse employment action.[5] The basis for the Motion is that there is no genuine issue of material fact that the City has legitimate reasons for its employment actions—causally <u>unrelated</u> to her protected activities—and that, as a matter of law, Plaintiff cannot show that these reasons are pretextual.

##### i. The City has a Legitimate Reason for Eliminating Plaintiff's IPP Inspector Position That is not Pretextual.

Plaintiff's position as the City's IPP Inspector was determined to be redundant and unnecessary, which is the only reason it was eliminated. The Eleventh Circuit has recognized that the elimination of an employee's position can be a legitimate, non-discriminatory basis for termination. *Sharman v. City of Tallahassee*, 831 F. App'x 923, 926 (11th Cir. 2020) (affirming

---

[5] This action should not be a referendum on the quality of the City's water supply, which appears to be the goal of Plaintiff. This is a whistleblower action, not a suit about the quality of the water supply. The only issue in this action is whether Plaintiff suffered an adverse employment action, caused by retaliatory animus rooted in her participation in the investigations by the DOH and OIG.

Indeed, the City readily concedes that Plaintiff identified an issue with the City's cross connection program, which raised genuine concerns about its water supply that needed to be addressed (and were). Facts, ¶¶ 11-15, 30-31. Those issues were resolved by a consent order with the DOH, which, by definition, means that the City chose not to dispute the allegations made by the DOH. Facts, ¶ 31.

summary judgment for the municipality in public utility worker's retaliation action because based on the non-pretextual, legitimate reason for termination, namely, the city eliminated the worker's position as "part of restructuring the Division to perform more efficiently"); *Barton v. Bd. of Regents of Univ. Sys. of Georgia*, 478 F. App'x 627, 631–32 (11th Cir. 2012) (holding the utility worker failed to show that the elimination of his position was pretext).

As Plaintiff herself admits:

> Q. Are you telling me that really nobody had to do the work in pretreatment that you ... had formerly done?
>
> A. While I was working with the city, I was the primary person doing the inspections. As I took on the load of the reclaimed water program, the inspections on the pretreatment side were more of a -- let me see – as need. If something happened, then I would have to address it. So we went from a proactive to a reactive.
>
> Q. Can you give me an understanding of how much of your workday would be on these reused water issues that you've told me about?
>
> A. It started a little at a time and eventually became full-time.
>
> * * *
>
> Q. ...When did reused water become your full-time job responsibility?
>
> A. Sometime in, maybe, August, September.
>
> Q. Of 2018?
>
> A. Yes.

Plaintiff's Deposition, 26:21-27:17, 29:21-30:06; Facts, ¶ 10. Accordingly, based on Plaintiff's own testimony, there was no need for her to perform industrial pretreatment program inspections at all by no later than September of 2018.

Hassan Hadjimiry, the City's new utilities director who started in June 2020, eventually realized that the IPP Inspector position was redundant and could be performed by the IPP Administrator. Facts, ¶¶ 38-42. Nevertheless, he did not seek to simply eliminate it, but conducted an investigation regarding the need for this position. Facts, ¶¶ 40-41. Once he had performed due diligence, he approached the City Manager, Terrence Moore, with his proposal. Facts, ¶ 41.

The City Manager agreed with the recommendation and made the decision to eliminate the

position during the first week of January, after hearing the basis from Hadjimiry. Facts, ¶¶ 57, 58. One of the City Manager's initiatives is to run City operations more efficiently, even if that requires eliminating positions. Facts, ¶ 44. The elimination of the IPP Inspector position, moreover, saved the Utilities Department roughly $80,000. Facts, ¶ 58 n.3. Plaintiff was notified of the elimination of the IPP Inspector position on January 26, 2022. Facts, ¶ 59. Thus, the undisputed facts show that the City has a legitimate basis for Plaintiff's position, confirmed by Plaintiff herself, namely, the redundancy of the IPP Inspector role. Facts, ¶¶ 7-10; 38-42; 57-59. The City has, and can show, a legitimate basis for elimination the IPP Inspector position. *Sharman*, 831 F. App'x at 927 (acknowledge lack pretext where the plaintiff's "position would have been eliminated to achieve the goal of having a more productive and cost-effective workforce").

Therefore, Plaintiff must come forward with evidence that the decision was a pretext to cover retaliatory animus based on Plaintiff's participation in an investigation that occurred in early 2020, when neither Hadjimiry nor Moore were working for the City (*see* Facts, ¶¶ 32, 45), that concluded—without a fight—via consent order with the DOH. Facts, ¶¶ 22, 31; *Springer,* 509 F.3d at 1348-49; *Ramsey*, 303 Fed. Appx. at 765. Again, neither Hadjimiry nor Moore were even working for the City at the time the DOH investigation began. Facts, ¶¶ 32, 45. Thus, Hadjimiry and Moore, who were cooperating with the DOH investigation and advocating for the consent decree, had no motive to "cover up" prior issues in the Utilities Department. There is no evidence that Plaintiff can point to in support of that element of her claims.

Indeed, there is no evidence that the City ever objected to her participation in the DOH and OIG investigations. Plaintiff herself admits that her supervisor at the time, Ralph Lugo, never prohibited her from contacting the DOH. Facts, ¶ 17. The City Manager at the time the DOH investigation began, Neil De Jesus, was told by Plaintiff that she had been contacted by the DOH. Facts, ¶¶ 15-16. In her own words, this was De Jesus' response:

> Q. Was the substance of that communication that you had been contacted by DOH?
>
> A. Yes.
>
> Q. Did you receive a response to that e-mail?
>
> A. Yes.
>
> Q. What did the Mr. De Jesus say?

> *A. He said by all means you do what you need to do to investigate -- be part of that investigation.*

Plaintiff's Deposition, at 113:20 – 114:10 (emphasis added); Facts, ¶ 16.

There is nothing in the facts that could be construed as evidence of a cover up or the creation of a pretext to retaliate against Plaintiff for participating in investigations concerning the water utility. Despite Plaintiff's participation in multiple investigations over the course of months, the City never sought to punish her for that; it only encouraged her. Plaintiff was even involved in assisting the DOH with determining the scope of the problem on the City's time. Plaintiff cannot marshal any facts to establish and genuine issue concerning pretext. Because the City has a legitimate reason for eliminating Plaintiff's IPP Inspector Position and there is no evidence of actual retaliatory animus, the City should be granted summary judgment on all of Plaintiff's claims.

      ii.    *The City Has Legitimate Reasons for not Offering the Cross Connection Control Coordinator ("CCCC") Position to Plaintiff That Are Not Pretextual.*

The City also has a legitimate reason for not offering the CCCC position to Plaintiff. She was interviewed by three people she does not accuse of any retaliatory animus – Alicia Magloire (who would have supervised the CCCC as the Environmental Resource Compliance Manager at the time), Juan Guevarez (the assistant director of utilities) and Kelly Simmons. Facts, ¶ 66/ Hassan Hadjimiry was present, but only observed. Facts, ¶ 65. He did not complete an interview scorecard. *Id.* These three reviewers gave her a score below that of the only other candidate and, consequently, the other candidate received the position. Facts, ¶ 67.

The City never denied her an opportunity to apply for the position or compete for it. Plaintiff was one of only two finalists. Facts, ¶ 63. The other candidate performed better in the interview, scoring eight points higher than Plaintiff. Facts, ¶ 67. Notably, each member of the scoring panel dinged her scoring significantly because Plaintiff did not know the correct answer regarding the lowest level of backflow valve protection. Facts, ¶ 68. Given the City's prior history with backflow valves and cross-connections, a correct answer to that particular question could be easily understood as a heavily-weighted question for the interviewers. Plaintiff can offer no criticism of the process used, which was no different than any other hiring process. She is simply disappointed in the result and has tried to justify it by claiming retaliation. Accordingly, there is a legitimate reason that the City did not hire Plaintiff as its CCCC. Plaintiff must come forward with evidence that the City's decision was merely pretext, which she cannot do. *Springer,* 509 F.3d

at 1348-49; *Ramsey*, 303 Fed. Appx. at 765.

   iii. *The City Has Legitimate Reasons for not Offering the Environmental Resource Compliance Manager Position to Plaintiff that Are not Pretextual.*

  The City followed its standard recruitment and application process for the ERCM position for which Plaintiff applied. Plaintiff was not excluded from consideration by any City employee. She was excluded by software based on her answers to questions in an electronic application.

  Specifically, the City uses an applicant screening software, NEOGOV, which automates its recruitment and hiring process. Facts, ¶ 71. Among the City's requirements for the ERCM position, a candidate needs to possess a four-year college degree. Facts, ¶ 69. This requirement was programmed into NEOGOV as a condition precedent to consideration. Facts, ¶¶ 71-72. Plaintiff admits that she does not have such a degree. Facts, ¶¶ 70-73. As a result, the software did not send her application to the City. Facts, ¶¶ 70-73. Moreover, Plaintiff admits that she never brought her application to the City's attention to try to overcome the rejection of her application by NEOGOV. Facts, ¶ 74.

  There is no evidence that the City rejected Plaintiff's application for the ERCM because of retaliatory animus. Based on the record evidence, no City staff member even made the decision. Accordingly, Plaintiff cannot show that the decision was merely a pretext to cover up retaliatory animus. As a result, the City should be granted summary judgment in its favor.

  **b. *The City's Alleged Retaliation Lacks Temporal Proximity.***

  "In the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir.2004) (citing *Wascura v. City of South Miami,* 257 F.3d 1238, 1248 (11th Cir.2001)); *Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010) (holding that a three month timespan between the protected activity and the adverse action was too long). None of Plaintiff's allegations or evidence can establish a causation issue for a jury as a matter of law. Indeed, based on the timing of Plaintiff's actions, it appears she is the party who is attempting to use pretext to avoid the conclusion that her whistleblower allegations and section 1983 claims are invalid.

  Plaintiff's allegations of protected speech occurred many months (and, in some cases, years) before the elimination of Plaintiff's position. The Eleventh Circuit has held that a three-to-four month delay between protected activity and an adverse employment action is "too large a

gap" too prove causation. *See DeBose v. USF Bd. of Trustees*, 811 Fed. App'x 547, 557 (11th Cir. 2020) (citing *Thomas*, 506 F.3d at 1364). Here, Plaintiff was notified of the elimination of her position on January 26, 2022. Facts, ¶ 59. Under the Eleventh Circuit's temporal proximity standard, the triggering, protected activity must have arisen after about October 26, 2021 (i.e., ninety days prior to the elimination). Plaintiff's initial, verbal complaint to Hadjimiry occurred on September 7, 2021. Facts, ¶ 49. Plaintiff did not put her complaint in writing until January 21, 2022,⁶ four months and 14 days after her meeting with the City Manager and after Hadjimiry had already approached the City Manager about eliminating the redundant, IPP Inspector position. Facts, ¶¶ 42, 56-59. The record is undisputed that the decision to eliminate the IPP Inspector position was made *before* Plaintiff's written complaint. Facts, ¶¶ 42, 56-59. Accordingly, her complaints regarding Hadjimiry are too attenuated to support her retaliation claims.

To the extent Plaintiff alleges that she was in continuing contact with DOH investigators from November 2021 through January 2022 (Compl., ¶¶ 75, 78), there is no evidence that the City, Moore, or Hadjimiry was aware of such conduct. With no proof that the Defendants had first knowledge of protected activity within three months of her 'termination' the Defendants should be granted summary judgment.

### IV. PLAINTIFF HAS FAILED TO MEET THE STRINGENT MONELL STANDARDS AS TO COUNT I AS A MATTER OF LAW.

Where, as here, a plaintiff has chosen to sue the municipality itself under 42 U.S.C. § 1983, rather than individual municipal employees, the plaintiff must show the deprivation of her rights was due to the enforcement of a municipal "policy or custom." S*ee Monell v. Department of Social Serv*., 436 U.S. 658 (1978) and *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) ("the requirement of a municipal policy or custom constitutes an essential element of a § 1983 claim that a plaintiff must prove in order to establish municipal liability"). "A policy or custom 'can be either a written custom or policy, such as an ordinance, or an unwritten practice that is so widespread and so permanent and well settled as to constitute a custom or use with the force of law.'" *Archey v. City of Deerfield Beach, Fla*., 2016 WL 4376650, at *2 (S.D. Fla. Aug. 17, 2016)

---

⁶   The complaint to Human Resources itself is not alleged to constitute protected activity, under the PWA. For good reason, because that "complaint" was not related to the water system or to public health, but rather for the personal purpose of complaining about her treatment in the workplace. *See* § 112.3187, Fla. Stat. Moreover, the September 7, 2021 verbal complaint to the City Manager did not constitute protected, whistleblower activity, which requires a signed, *written* complaint. *Id.*

(some internal quotations omitted) (quoting *Flowers v. Patrick*, 869 F. Supp. 2d 1331, 1334-35 (M.D. Ala. 2012)). The record is devoid of any evidence of municipal policy or custom concerning the alleged deprivation of her rights. Summary judgment should be granted for that reason alone.

To the extent Plaintiff is proceeding under a final policy maker claim, the alleged "policymaker" must have "final policymaking authority over the relevant subject matter." *Morro v. City of Birmingham*, 117 F.3d 508, 510 (11th Cir. 1997). "[A] municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Id.* at 514; *see also Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2003) ("The Eleventh Circuit 'has interpreted Monell's policy or custom requirement to preclude § 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion.'") (quoting *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997)).

First, Plaintiff cannot establish that Hadjimiry had final decision making authority over the elimination of Plaintiff's position, as he did not. Facts, ¶ 43. Only the City Manager has the final authority to approve reorganizations and to eliminate positions. *Id.* Accordingly, Count I fails as a matter of law to the extent it is based on Hadjimiry's actions.

Second, the City cannot be liable under 42 U.S.C. §1983 under a theory of ratification. "[L]iability on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority. The final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it. *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297–98 (11th Cir. 2002) (c*iting Gattis v. Brice,* 136 F.3d 724, 727 (11th Cir. 1998)).

Here, there is no evidence in this action that Moore ratified any <u>unconstitutional basis</u> concerning any employment decision related to Plaintiff, as Plaintiff's position was eliminated – not due to any retaliatory animus – but due to the redundancy of the role.[7] *See, supra*, Section III. The City can only be held liable under § 1983 where "action pursuant to official policy of some nature caused a constitutional tort is well-settled law. Further, "only those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability."

---

[7] For this same reason, Moore maintains Count I fails against him as a matter of law.

*Id*. at 1297.  Because Moore cannot have committed any unconstitutional tort, the City cannot be held liable based on his decisions.

## THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS[8]

### V. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFEID IMMUNITY AS TO COUNT I.

#### a. *Standard for Qualified Immunity.*

Qualified immunity offers "a complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (*citing Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro,* 284 F. 3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  It shields from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee,* 284 F.3d at 1194 (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).

This immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Because it is "an immunity from suit rather than a mere defense to liability," its applicability is a threshold question that courts must decide <u>at the earliest possible stage of litigation</u>.  *Harlow*, 457 U.S. at 818 (emphasis added).  Qualified immunity may therefore be properly considered on a motion to dismiss.  *See*, *e.g.*, *Flores v. Satz*, 137 F. 3d 1275, 1278-79 (11th Cir. 1998) (reversing denial of motion to dismiss).

To receive the benefit of qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F. 3d at 1194 (internal quotation marks omitted).  If the defendant meets the *initial burden* of establishing that he was *acting within the scope of his discretionary authority, then the burden shifts to the plaintiff* to show that qualified immunity is inappropriate. *Id*. at 1358 (emphasis added).

---

[8] Moore and Hadjimiry adopt and incorporate the arguments raised by the City as to Counts I and II, *supra*, Section III.

### b. The Individual Defendants are entitled to qualified immunity on Plaintiff's Section 1983 claims because they were clearly acting within their discretionary authority.

As noted, *supra*, Moore and Hadjimiry bear the initial burden of demonstrating that they were acting in within the scope of their discretionary authority and, thus, entitled to qualified immunity. *Cottone*, 326 F.3d at 1358. In order to determine whether the acts in question are discretionary acts protected by qualified immunity, we must look at "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *King v. Lumpkin*, 545 F. App'x 799, 802 (11th Cir. 2013) (quoting *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1265 (11th Cir.2004)).

There cannot be any genuine dispute that both Moore and Hadjimiry were acting within the course and scope of their roles as City Manager and Utilities Director, respectively, at all material times alleged. Hadjimiry's alleged actions all related to the management, supervising, and operations of the Utilities Department. *See* Compl., 1; Facts, ¶¶ 38-42. Similarly, Moore's actions all occurred within his purview as City Manager. Compl., 1; Facts, ¶¶ 43-44.

Having meet the initial qualified immunity burden of showing the alleged actions occurred within Moore and Hadjimiry's discretionary authority, the burden shifts to plaintiff to establish both (1) that a constitutional right was violated and (2) that the constitutional right was clearly established at the time the official acted. *Lee*, 284 F.3d at 1194; *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008). Clearly established law "should not be defined at a 'high level of generality,'" but "must be 'particularized' to the facts of the case." *White v. Pauley*, 137 S. Ct. 548, 551, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 63 U.S. 731, 742 (2011)). If the plaintiff cannot establish either element, qualified immunity is appropriate. *See Pearson v. Callahan*, 555 U.S. 223, 226 (2009).

Plaintiff cannot meet their burden to show that either individual defendant violated a clearly established law for the same reasons that the retaliation claims fail against the City. As set forth more fully, supra, neither Hadjimiry nor Moore took any adverse employment actions based on pretext or for an unconstitutional purpose. Plaintiff's position was irrefutably eliminated due to redundancy, lacking a temporal proximity to any protected activity of which Moore or Hadjimiry were aware. Facts, ¶¶ 38-42, 56-59.

Plaintiff's failure to promote claims based on the CCCC position and the ERCM application are similarly without a factual basis, as discussed more fully, *supra* Section III.

13

Specifically, Plaintiff, although a finalist for the CCCC position, was not the top-scoring candidate, failed to answer a critical interview question regarding backflow valves, and none of the scorers are individuals against whom she claims retaliatory animus. Facts, ¶¶ 62-68. Moreover, Plaintiff cannot show the City was even aware of her ERCM application, rejected by the screen software and for which she was admittedly not qualified. Facts, ¶¶ 69-74. They are, therefore, entitled to qualified immunity as to the Section 1983 claims in Count I.

### VI. PLAINTIFF HAS NOT SHOWN FACTS SUFFICIENT TO STRIP MOORE AND HADJIMIRY OF THEIR SOVEREIGN IMMUNITY, PURSUANT TO SECTION 768.28(9)(a), FLA. STAT., AS TO COUNT II.

"In Florida, sovereign immunity is the rule, rather than the exception, as evidenced by article X, section 13 of the Florida Constitution." *Pan-Am Tobacco Corp. v. Dep't of Corrections*, 471 So. 2d 4, 5 (Fla. 1985). *See also Cir. Ct. of the Twelfth Jud. Cir. v. Dep't of Natural Resources*, 339 So. 2d 1113, 1114 (Fla. 1976) (explaining that Article X, section 13 of the Florida Constitution provides "absolute immunity for the state and its agencies absent waiver by legislative enactment or constitutional amendment."). Specifically, section 768.28(9)(a) states that municipal officers <u>may not be held personally liable in tort</u> or named as a party defendant in any action for any injury or damages suffered as a result of any act, event, or omission of action in the scope of his or her employment or function, <u>unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property</u>. § 768.28(9)(a), Fla. Stat. (emphasis added). Critically, a municipality and employee cannot *both* be held liabile for the same tort under section 768.28, Fla. Stat. *McGhee v. Volusia Cnty.*, 679 So.2d 729, 730 (Fla. 1996).

"Importantly, the immunity provided by section 768.28(9)(a) is both an immunity from liability <u>and</u> an immunity from suit, and the benefit of this immunity is effectively lost if the person entitled to assert it is required to go to trial." *Furtado v. Yun Chung Law*, 51 So. 3d 1269, 1277 (Fla. 4th DCA 2011) (quoting *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006)). "The trial judge must act as a gatekeeper in these circumstances, and should terminate civil proceedings when the immunity applies." *Willingham*, 929 So. 2d at 48 (internal citations omitted). *See also Keck v. Eminisor*, 104 So. 3d 359, 366 (Fla. 2012), (holding that individual immunity granted to government employees under section 768.28(9)(a) provides immunity from suit); *Furtado*, 51 So. 3d at 1277 ("[T]he trial court 'must act as a gatekeeper … and should terminate civil proceedings when the immunity applies.'") (citation omitted).

Here, Plaintiff alleges only that Moore and Hadjimiry acted in "bad faith." Compl., ¶ 103. Courts construing the bad faith prong of section 768.28(9)(a) use the "actual malice" standard, *Parker v. State Board of Regents ex rel. Florida State University*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998), which means the conduct must be committed with "ill will, hatred, spite, [or] an evil intent." *Reed v. State*, 837 So. 2d 366, 368-69 (Fla. 2002); *see also Eiras v. Fla. Dep't of Bus. & Prof. Reg.*, 239 F. Supp. 3d 1331, 1345 (M.D. Fla. 2017) ("Under Florida law, bad faith for purposes of immunity under section 768.28(9)(a) is equivalent to 'actual malice.'") (citing *Dunn v. City of Boynton Beach*, 192 F. Supp. 3d 1310, 1326 (S.D. Fla. 2016)). Indeed, "actual or subjective malice, sometimes called 'malice in fact,' requires <u>the subjective intent to do wrong</u>." *Eiras v. Florida*, 239 F. Supp. 3d at 1345 (citing *Wilson v. O'Neal*, 118 So. 2d 101, 105 (Fla. 1960)) (emphasis added).

The record is undisputed that neither Moore nor Hadjimiry acted with any subjective intent to do wrong. Indeed, as set forth more fully, *supra*, Moore was wholly unaware of Plaintiff's purported, protected speech prior to January 21, 2022, and Hadjimiry did not make any adverse employment decisions against her (rather, it was the City Manager that eliminated the Plaintiff's position). Facts, ¶¶ 43, 58, 59. Moore had no knowledge that Plaintiff had exercised free speech rights or made any protected disclosure under the PWA until she filed her written complaint against Hadjimiry on January 21, 2022. Facts, ¶¶ 45-51. It is axiomatic that retaliatory animus cannot exist without knowledge of that actions allegedly causing the retaliation. *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000), *cert. denied*, 532 U.S. 1037 (2001) (stating that to demonstrate a causal connection, the plaintiff must show that "the decision maker was aware of the protected conduct at the time of the adverse employment action."). Plaintiff's cursory allegations of "bad faith" are simply not supported by the record and any purported actions by these individual defendants do not rise to the level meriting the removal of their sovereign immunity.

### VII. HADJIMIRY MADE NO ADVERSE EMPLOYMENT DECISION CONCERNING PLAINTIFF, THE COUNTS I AND II AGAINST HIM INDIVIDUALLY FAIL AS A MATTER OF LAW.

For individual liability to attach under 42 U.S.C. § 1983, the alleged actor must have the power to make decisions that are not subject to meaningful administrative review. *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325–26 (11th Cir. 2003) ("The Eleventh Circuit "has interpreted *Monell* 's policy or custom requirement to preclude § 1983 municipal liability for a

subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion. Thus, "[f]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." (*citing Scala v. City of Winter Park,* 116 F.3d 1396, 1399, 1401 (11th Cir. 1997); *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 638 (11th Cir. 1991) (holding that mayor was not the final policymaker with respect to zoning decisions where the city charter provided that the city council could override the mayor's veto of zoning ordinances). Thus, for purposes of Plaintiff's free speech retaliation actions, the "decision maker" for Plaintiff's termination claim is the person or entity that had the power to (and did) implement a "reorganization," which resulted in the "eliminat[ion of] her position." Compl., ¶¶ 84, 87. Similarly, the "decision maker" for the failure to promote claim is the individual or entity that had the power to (and did) fill the "newly created Cross-Connection Coordinator position." Compl., ¶ 62.

The only individual with the power to make decisions concerning City employment is Terrence Moore, the City Manager. Facts, ¶¶ 43, 59. As a result, for this reason as well as all the reasons applicable to the City, Hadjimiry should be granted summary judgment in his favor against the claims made against him as an individual.

### VIII. PLAINTIFF HAS NOT SOUGHT RECOVERABLE RELIEF AGAINST MOORE OR HADJIMIRY IN COUNT II, MERITING DISMISSAL.

Florida law is clear that, absent an enabling statute, purported violations of the Florida Constitution cannot form the basis of a claim for money damages. *Youngblood v. Fla. Dep't of Health*, 224 Fed. App'x 909, 913 (11th Cir. 2007); *Smith v. Bell*, 2008 WL 868253, * 9 (S.D. Fla. 2008); *Garcia v. Reyes*, 697 So.2d 549, 551 (Fla. 4th DCA 1997); *Tucker v. Resha*, 634 So.2d 756, 759 (Fla. 1st DCA 1994); *DeMarco v. Publix Super Markets, Inc.*, 360 So.2d 134, 136 (Fla. 3d DCA 1978). While this Court acknowledge that Plaintiff could obtain equitable relief as to Count II, such relief cannot be obtained against the individuals, Moore and Hadjimiry. Indeed, Moore and Hadjimiry, individually, are not capable of the equitable relief she seeks in the Complaint, namely, reinstatement to the same or equivalent position she previously held and her promotion to ERMC. Compl., Section IX, c. Such relief could only come from the City. Accordingly, because Plaintiff has not pled a cause of action in Count II for which relief could be granted as to Moore and Hadjimiry, this claim must fail as a matter of law.

WHEREFORE, Defendants respectfully request that this Motion for Summary Judgment

be granted, final judgment be entered in favor of Defendants on all remaining claims in the Complaint [ECF No. 1], together with such further relief that the Court deems just and proper.

Dated: February 9, 2023         Respectfully submitted,

                                            WEISS SEROTA HELFMAN
                                            COLE & BIERMAN, P.L.
                                            *Counsel for Defendant City of City of Delray Beach, Terrence Moore, and Hassan Hadjimiry*
                                            200 East Broward Boulevard, Suite 1900
                                            Fort Lauderdale, FL  33301
                                            Telephone:  (954) 763-4242
                                            Telecopier:  (954) 764-7770

                                            By*:  /s/ Daniel L. Abbott*
                                                  DANIEL L. ABBOTT
                                                  Florida Bar No. 767115
                                                  Primary: dabbott@wsh-law.com
                                                  Secondary: pgrotto@wsh-law.com