UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-81088-CV-MIDDLEBROOKS/MATTHEWMAN

Christine Ferrigan,

        Plaintiff,

v.

City of Delray Beach, Florida, et al.,

        Defendants

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
***CORRECTED* STATEMENT OF MATERIAL FACTS**

Plaintiff, Christine Ferrigan, by and through her undersigned counsel and under Federal Rules of Civil Procedure, Rule 56 and Local Rule 56.1, hereby submits her Response to Defendants' Statement of Material Facts in support of her Opposition to Defendants' Motion for Summary Judgment.

1.      Disputed. "Pretreatment" means the reduction of the amount of pollutants, the elimination of pollutants, or the alteration of the nature of pollutant properties in wastewater prior to or in lieu of discharging or otherwise introducing such pollutants into a [wastewater facility] WWF. The reduction or alteration may be obtained by physical, chemical or biological processes, process changes or by other means, except as prohibited by subsection 62-625.410(5), F.A.C.  Fla. Admin. Code § 62-625.200(17).

1

2.      Disputed.  The IPP Inspector is involved in the inspection of hundreds of industrial and commercial users of the City's sewer system.  Ferrigan, ECF No. 56-1, 5:17-25 – 6:1-19.

3.      Undisputed.

4.      Disputed.  "Reclaimed water" means water that has received at least secondary treatment and basic disinfection and is reused after flowing out of a domestic wastewater treatment facility.  Fla. Admin. Code § 62-600.200(57); Delray Beach Ord. § 59.04.

5.      Disputed.  The purpose of a backflow and cross connection control program "is to protect the potable water supply of the City from the possibility of contamination or pollution by isolating within its customer's internal system or systems those contaminants or pollutants which could backflow or back-siphon into the public water supply system; to promote the elimination or control of existing cross connections, actual or potential, between the customer's potable water system or systems and nonpotable water systems, plumbing fixtures, and industrial piping systems; and provide for the maintenance of a continuing program of cross connection control which will systematically and effectively prevent the contamination or pollution of all potable water systems."  Delray Beach Ord. § 52.81.

6.      Disputed.  See response to 5.

7.      Undisputed.

8.      Undisputed.

9.      Undisputed.

10.     Disputed.  There are hundreds of industrial/commercial users of the City's sanitary sewer system that require inspection in order to protect the system.  Ferrigan, ECF No. 56-1, 6:2-19, 7:2-18.  After inquiring into whether the City had a reclaimed water program and

discovering that the regulatorily required program did not exist, Ms. Ferrigan was asked by Water and Sewer Manager Scott Solomon to develop the program.   Ferrigan, ECF No. 56-1, 19:17-24, 20:4-8, 22:8-18, 24:7-25 – 25:1-13.

      11.     Undisputed.

      12.     Disputed.  It is unclear whether the contractor "breached several contractual requirements" or the City failed to perform its part of the work.  Gelin, ECF No. 57-6, 33:16-25 – 34: 1-5.

      13.     Undisputed.

      14.     Undisputed.

      15.     Undisputed.

      16.     Undisputed.

      17.     Undisputed only during the times Mr. Lugo served as Ms. Ferrigan's supervisor.

      18.     Undisputed.

      19.     Disputed.  Assistant City Attorney William Bennett, Deputy Utilities Director Victor Majtenyi, Bryan Heller, and Ralph Lugo attended the February 3, 2020 meeting with DOH.  Gelin, EF No. 57-6, 29:21-25 – 31:1-24, 45:3-10 (Heller and Majtenyi were upper management); Ferrigan, ECF No. 56-1, 96:9-11, 120:15-23.

      20.     Undisputed.

      21.     Undisputed.

      22.     Undisputed.

      23.     Undisputed.

      24.     Undisputed.

      25.     Undisputed.

26.     Undisputed.

27.     Undisputed.

28.     Undisputed.

29.     Undisputed.

30.     Undisputed.

31.     Undisputed.

32.     Undisputed.

33.     Disputed.  For non-union employees the manager or supervisor can recommend that an employee be terminated.  The City manager will more likely than not follow that recommendation.  Gelin, ECF No. 57-6, 133:13-25-134:1-15.  Defendant Hadjimiry (Utilities Director) made the determination that Ms. Ferrigan's position should be eliminated and recommended to Defendant Moore (City Manager) that he eliminate the position.  Ex. 1, Delray Beach (Oris), 29:8-23; Hadjimiry, ECF No. 57-2, 86:6-25, 87:25 – 88: 1-7.

34.     Disputed.  Mr. Hadjimiry was aware of Ms. Ferrigan's communications with DOH and OIG when he started with the City.  Ex. 1, Delray Beach (Oris), 115:22-25 – 116:1-16.

35.     Disputed.  See response to 34.

36.     Disputed.  Mr. Hadjimiry told Ms. Ferrigan "You're not giving them anymore information and you're not going to see them anymore and you're not coming in tomorrow on Saturday."  Ferrigan, ECF No. 57-1, 157:10-22.

37.     Disputed.  See response to 36.

38.     Disputed.  Ex.18, Second Declaration of Christine Ferrigan at ¶ 14.

39.     Disputed.  Ex. 18 at ¶¶ 14-15.

40.     Disputed.  Ex. 18 at ¶¶ 14-15; DeCarolis, ECF No. 57-5, 72:15-20.

41.     Disputed.  IPP Administrator Paul DeCarolis was shocked that Ms. Ferrigan was terminated.  He was not consulted.  DeCarolis, ECF No. 57-5, 74:6-25 – 75:1-2.  Before terminating Ms. Ferrigan, Mr. Hadjimiry and Mr. DeCarolis had discussions about going back to a more proactive pretreatment inspection program.  DeCarolis, ECF No. 57-5, 68:14-25 – 69:1-22.  Mr. DeCarolis informed Mr. Hadjimiry that he could not do plan reviews and inspections.  He could not do both jobs.  DeCarolis, ECF No. 57-5, 72:15-20.

42.     Disputed.  See response to 41.

43.     Undisputed.

44.     Undisputed.

45.     Undisputed.

46.     Undisputed.

47.     Undisputed.

48.     Disputed.  Mr. Moore became aware that Ms. Ferrigan had been involved with the DOH investigation when the recommendation to eliminate her position was raised.  Ex. 1,Delray Beach (Oris), 115:22-25 – 116:1-10, 116:17-24.

49.     Undisputed.

50.     Undisputed.

51.     Disputed.  Ferrigan, ECF 57-1, 176:5-25.

52.     Undisputed.

53.     Undisputed.

54.     Undisputed.

55.     Undisputed.

56.     Undisputed.

57.     Disputed.  The cited reference does not support the fact alleged.

58.     Disputed.  Defendant Moore's decision to eliminate Ms. Ferrigan's position was based on the recommendation of Defendant Hadjimiry.  Moore, ECF No. 58-4, 79:6-23, 95:20-23.

59.     Undisputed.

60.     Disputed.  The investigation was limited to events that took place at Delray Summit and did not include Ms. Ferrigan's other complaints about being harassed or retaliated against for raising concerns with DOH.  Bast, ECF No. 55-6, 153:13-25-154:1-21.

61.     Disputed.  See response to 60.

62.     Undisputed.

63.     Undisputed.

64.     Undisputed.

65.     Undisputed.

66.     Disputed.  Mr. Hadjimiry observed the interviews.  Human Resources Representative Armando Figueroa also scored the interviews.  ECF No. 58-5 at 1.

67.     Undisputed with the exception of the scores that are reported, which are incorrect.

68.     Disputed.  The applicable regulations provide that a pressure vacuum breaker (PVB) is inappropriate to use when there is backpressure as there is in much of the City's system.  Without considering backpressure, the regulation notes that a dual check device provides the worst level of protection, not a double check valve which is incorrectly noted as the "target response."   The regulations state:  "Means of backflow protection, listed in an increasing level of protection, include the following: a dual check device (DuC); a double check valve assembly (DC) or double check detector assembly (DCDA); a pressure vacuum breaker

assembly (PVB); a reduced-pressure principle assembly (RP) or reduced-pressure principle detector assembly (RPDA); and an air gap. A PVB may not be used if backpressure could develop in the downstream piping." Fla. Admin. Code § 62-555.360, Table 62-555.360-2, n. 1.

69.     Undisputed.

70.     Undisputed.

71.     Disputed. Human Resources reviews applications submitted through NeoGov to determine if a candidate meets minimum qualifications. Ex. 1,Delray Beach (Oris), 16:11-25 – 17:1. Mr. Hadjimiry, who knew Ms. Ferrigan's experience very well, told Mr. Oris that she did not have the minimum qualifications, and her application was not forwarded to him for consideration. Ex. 1, Delray Beach (Oris), 48:16-25.

72.     Disputed. See response to 71.

73.     Disputed. The cited references do not support the fact alleged.

74.     Disputed. Applicants are not informed that they can appeal a rejection notification. Ex. 1, Delray Beach (Oris), 53:9-16.

## ADDITIONAL FACTS

75.     In 2018, Ms. Ferrigan reported problems she observed with the reclaimed water program to her supervisors, Scott Solomon and Victor Majtenyi. Ferrigan, ECF No. 57-1, 52:9-25 – 53:1-17; 54:22-25 – 55:1-7.

76.     Later, in November 2018, Ms. Ferrigan began to receive reports of residents experiencing illnesses that they believed related to their drinking water. Ferrigan, ECF No. 57-1, 58 – 59:1-17; Ex. 2, Cross Connection Issue Facts at 1 – 3.

77.     On December 6, 2018, Ms. Ferrigan discovered a cross-connection which she immediately reported to Mr. Solomon and advised him that the discovery had to be reported to

Florida Department of Health (DOH) and Department of Environmental Protection (DEP).
Ferrigan, ECF No. 57-1, 53:18-25 – 54:1-21.

78.     Sometime in early to mid-2019, Ms. Ferrigan also discovered additional cross
connections and reported them to Mr. Solomon. *Id*. at 66:14-25 – 69:1-17; 73:8-10.

79.     On or about April 1, 2019, Ms. Ferrigan discovered that the written report
submitted by the City to DOH on or about December 19, 2018 concerning the cross-connection
that was discovered at 801 S. Ocean Blvd. failed to accurately report that residents had reported
getting sick from their drinking water.  The report had been submitted and signed by Utilities
Director Marjorie Craig.  *Id*. at 74:23-25, 77:12-19.

80.     On or about April 5, 2019, Ms. Ferrigan reported the inaccurate report that was
submitted to DOH to the Assistant City Manager/Acting Utility Director Caryn Gardner-Young.
*Id*. at 79:20-25 – 82:1-6.

81.     On or about May 17, 2019, Ms. Ferrigan hand-delivered a timeline of events
entitled *City of Delray Beach Utilities: Cross-Connection Issue Facts* to Ms. Gardner-Young.
The document provided a detailed description of events that occurred in late 2018 involving four
homeowners that complained about the poor quality of their drinking water at the time.   Ex. 2,
Cross-Connection Issue Facts at 1 – 5.  Ms. Ferrigan reported that at the time she was finding
"major violations" with the reclaimed water program in area 12C.  *Id*. at 6.

82.     Ms. Gardner-Young never responded to Ms. Ferrigan's timeline. Ferrigan, ECF
No. 57-1, 84:11-18.

83.     On or around January 2, 2020, Ms. Ferrigan was contacted by DOH official Steve
Garcia.  Mr. Garcia called to inquire about a complaint DOH received from a resident who
wanted to know what happened with the cross-connection issue discovered in late 2018.  Ms.

Ferrigan confirmed that she was familiar with the issue.  Ferrigan, ECF No. 57-1, 100:13-25 –
101:1-19; 109:23-25 – 110:1-22; DOH Reyes, ECF No. 57-8, 26:13 – 27:19.

84.     On January 3, 2020, Ms. Ferrigan emailed Interim City Manager and Fire Chief
Neal de Jesus that members of the public had been exposed to reclaimed water through
"illegal/improper cross connections."  She further informed him that the public was not notified
and that a resident's complaint to DOH had triggered an investigation. Ms. Ferrigan also stated
that she was ordered in the past not to communicate with DOH.  She concluded by asking Mr. de
Jesus for protection under the Florida Whistle-Blower's Act.  Ex. 3, Jan. 3 email at 2.  Ms.
Ferrigan's email was forwarded to City Attorney Lynn Gelin and new City Manager George
Gretsas. *Id*. at 1.

85.     On or about January 6, 2020, Ms. Ferrigan met at the request of officials from
DOH for approximately six hours to discuss the problems she had encountered with the City's
reclaimed and drinking water systems.  Ferrigan, ECF No. 57-1, 113:4-10; 114:11-19.

86.     At the conclusion of the meeting with DOH, Ms. Ferrigan was asked to prepare a
timeline of her experiences with the City's reclaimed and drinking water systems.  She provided
that timeline around the January 15 – 19, 2020-time frame along with other documentation for
DOH to review. *Id*. at 114:20-25 – 115:1-4.  All the issues raised by Ms. Ferrigan were being
discovered for the first time by DOH officials.  DOH Reyes, ECF No. 57-8, 28:4-25 – 35:1-20.

87.     The timeline Ms. Ferrigan provided to DOH was twenty-nine pages.  It covered
issues that arose with the City's reclaimed water program from 2018 through early 2020.  Ex. 4,
Christine Ferrigan Timeline.

88.     In addition to raising concerns about the reclaimed water system and the
contamination of drinking water, Ms. Ferrigan also worked with the public interest group Public

Employees for Environmental Responsibility (PEER) to reveal that the City's water was contaminated with substances are sometimes collectively referred to as PFAS.  Ms. Ferrigan assisted PEER in obtaining a samples that led to the disclosure in October 2020 that the City's water was contaminated. Ferrigan, ECF No. 57-1, 133:23-25 – 139:1-9.

89.     On October 26, 2020, PEER publicly released the PFAS test results for the Delray Beach water system.  See, *Alarming PFAS Levels in Delray Beach Drinking Water* published at https://peer.org/alarming-pfas-delray-beach-drinking-water/.

90.     City Utilities Director Hassan Hadjimiry learned that Ms. Ferrigan obtained the sample that was used by PEER to report that the City's water was contaminated. Hadjimiry, ECF No. 57-2, 166:18-25-167:1.

91.     The revelation of PFAS contamination led to the involvement of DOH and a recommendation that the City test quarterly to monitor PFAS contamination levels.  Ex. 5, October 13, 2021 letter from DOH to Mr. Hadjimiry.

92.     At present, the PFAS levels in the City's water system exceed the current EPA health advisory levels.  DOH Reyes, ECF No. 57-8, 71:14-25 – 73:1-3.

93.     In February 2020, Ms. Ferrigan reached out to OIG because she was concerned that she would be fired because of her disclosures regarding the reclaimed water program.  Ms. Ferrigan asked OIG to provide her with whistleblower status.  Ferrigan, ECF No. 57-1, 149-150.

94.     On September 25, 2020, OIG determined that Ms. Ferrigan was entitled to whistleblower status.  Ex. 6, OIG Whistleblower Determination.

95.     In a published report issued May 6, 2021, "OIG found evidence that certain City staff were aware of at least one report of sickness caused by the drinking water at the time the

City falsely reported to FDOH on December 19, 2018 that no reports of sickness or illness had been received." Ex. 7, OIG Report at 2, 7.

96.     The OIG Report states that a whistleblower complained " that the 12C Project resulted in prohibited cross-connections and that City officials intentionally concealed from state officials that residents were sickened when reclaimed water contaminated the City's drinking water system." Ex. 7 at 1, 8.

97.     Ms. Ferrigan wrote a response to the findings in the OIG Report. They are attached to the Report. Ex. 7, Attachment B.

98.     It was well known that Ms. Ferrigan was the person who blew the whistle to OIG. Gelin, ECF No. 57-6, 123:18-25 – 124; Ex. 1, Delray Beach (Oris), 38:4-7; Hadjimiry, ECF No. 57-2, 113:4-25 – 114:1-15.

99.     On July 1, 2020, DOH issued a warning letter to the City. Ex. 8, DOH Warning Letter. The letter outlined twelve regulatory violations. The letter was issued because "the department had already gathered sufficient evidence to document and substantiate that the City of Delray Beach was in violation of the Safe Drinking Water Act, specifically pertaining to backflow prevention and cross connection control." Reyes, ECF No. 57-8,62:6-25 – 63:1-12.

100.     On March 15, 2021, DOH submitted a Civil Penalty Authorization Memo to the Florida Department of Environmental Protection under the Drinking Water Program seeking almost $1.8 million in penalties and costs from the City due to its violation of drinking water standards. Ex. 9, Civil Penalty Memo.

101.     The memo explicitly refers to the City employee that was contacted by DOH on January 3, 2020 and references the timeline she provided. Ex. 9, at 2. The employee being referred to was Ms. Ferrigan. DOH Reyes, ECF No. 57-8, 88:6-14; 103:19-22. It was well-

known that Ms. Ferrigan was the employee/whistleblower who cooperated with DOH's investigation.  *See, e.g.*, Gelin, ECF No. 57-6, 96:15-25 – 97:1-16.

102.     In discussing the Civil Penalty Authorization Memo, DOH Director of Environmental Public Health, Rafael Reyes, described the seriousness of the violations: "[t]he department has never seen a situation of this magnitude which actually reflects gross negligence."  DOH Reyes, ECF No. 57-8, 90:5-12.   Mr. Reyes went on to testify about the significance of the violations and the fact that many presented a "major public health threat."  DOH Reyes, ECF No. 57-8, 96:19-25 – 99:1-22.

103.     On November 12, 2021, DOH issued a Consent Order requiring the City of Delray Beach to pay a fine and costs totaling $1,021,193.90.  Consent Order, ECF No. 58-3, ¶ 6. The Order finds the City violated at least nine (9) regulatory standards concerning its cross-connection program and lists the City's violations, including that the City "submitted one or more false statements."  Consent Order, ECF No. 58-3, ¶ 4(a) – (i). The Consent Order mandates a timetable for corrective actions.   Consent Order, ECF No. 58-3, ¶ 5.

104.     On January 21, 2022, Ms. Ferrigan submitted a written complaint to the City's Human Resources Department asserting that she was being harassed and bullied by Utilities Director Hassan Hadjimiry.  The complaint raises a particular incident involving a water customer who spoke to Mr. Hadjimiry and was threatening to Ms. Ferrigan.  Ex. 10, HR Complaint.  But the complaint also alleges that Mr. Hadjimiry was harassing Ms. Ferrigan because of her communications with DOH.

[On] 9-15-20 I contacted DOH to report that in a meeting with Hadjimiry & Magloire (9-11-20) I was ordered not to report any history on a location. I explained to Hadjimiry that I was told by

DOH to include everything. He was not happy. See email 9-15-20. Hadjimiry has told several employees to stay away from me because I am trouble. [Ex. 10, at 1-2][1]

105. On January 26, 2022, Ms. Ferrigan was terminated with no warning or notice. Ex. 11, Letter from Terrence Moore to Christine Ferrigan. The letter described the following reasons for terminating Ms. Ferrigan, which are refuted by the evidence.

(a)   "Due to the reorganization of the Department of Utilities of the City of Delray Beach, I have decided to eliminate the position of Utilities Industrial Pretreatment Program (IPP) Inspector effective today, January 26, 2022." There is no evidence that the Pretreatment Program was reorganized other than to eliminate Ms. Ferrigan's position as IPP Inspector.

(b)   "During the tenure of our current Utilities Director, the City has undertaken efforts to review and analyze various positions, such as the IPP Inspector, in order to determine their effectiveness and overall need. As such, it has been determined that the duties and responsibilities of your position can be accomplished by the IPP Administrator." There is no evidence that other positions within the Utilities Department were analyzed and eliminated.[2] Rather, there were positions added. Concerning the assertion that the IPP Administrator can also handle the duties on the IPP Inspector, the evidence reveals that claim is false - pretextual.

(i)   Paul DeCarolis has been the City's IPP Administrator for many years. He testified that he spends 50-60% of his time doing plan review to determine impact fees. DeCarolis, ECF No. 57-5, 20:1-5, 20:22-24. The remaining 40% of his time is spent overseeing the tanks department, storage tanks, and the welfare protection program." *Id*. at 20:25- 21:1-4.

---

[1] *See, also*, Ferrigan, ECF No. 57-1, 175:13-25 – 179:1-18 (describing the events leading to the complaint and the complaint process).
[2] When asked what positions were analyzed, Assistant City Administrator admitted that no position other than Ms. Ferrigan's was reviewed by the City. Oris 28:20-24.

(ii)     Although Ms. Ferrigan's position was eliminated, the Utilities Department hired a plan reviewer (Joe Ballardo), so that Mr. DeCarolis could go out in the field and do more Pretreatment Program inspections.   *Id.* at 43:1-6, 65:21-25.   Specifically, Mr. DeCarolis testified "we're an extremely busy City and the director [Mr. Hadjimiry] wants me to concentrate more on pretreatment and get away from plan review."   *Id.* at 66:2-6, 20-25.   He further testified that Mr. Hadjimiry "wants me to get away from plan review, so I can do what involves with pretreatment.  That's inspections, doing proactive and doing – concentrate on more inspections." *Id.* at 67:10-13.   Mr. DeCarolis also testified "I have to train someone then we're going to start back at me doing more inspections."   *Id.* at 67:17-19.   Even before terminating Ms. Ferrigan, Mr. Hadjimiry and Mr. DeCarolis had discussions about going back to a more proactive pretreatment inspection program.   *Id.* at 68:14-25 – 69:1-22.   In fact, before Ms. Ferrigan was terminated, Mr. DeCarolis informed Mr. Hadjimiry that he could not do plan reviews and inspections.  He could not do both jobs.   *Id.* at 72:15-20.   Mr. DeCarolis was shocked that Ms. Ferrigan was suddenly terminated.  He was not consulted about eliminating Ms. Ferrigan's position. *Id.* at 74:6-25 – 75:1-2.

(c)     "[T]he COVID-19 pandemic has had a significant budgetary impact on the City and has prompted the need to make serious budgetary reductions and staffing changes within every department. The elimination of your position is a necessary result of these changes . . ." The claim that eliminating Ms. Ferrigan's position was part of an effort to "make serious budgetary reductions" was also false.

(i)  The City provided Assistant City Manager Jeffrey Oris to testify on behalf of the City concerning the reasons for Ms. Ferrigan's termination among other issues. Ex. 1, Delray Beach (Oris), 1:13-25.

14

(ii)     Financial documents for the fiscal year involving Ms. Ferrigan's position elimination were reviewed with Mr. Oris.  He acknowledged that the City financial report was favorable.  *Id*. at 105:16-25 – 111:14.  Mr. Oris admitted that the City had $342 million more in assets than liabilities.  *Id*. at 111:1-14.  Mr. Oris admitted that Ms. Ferrigan's position was not eliminated to address a budget deficit.  *Id*. at 113:1-17.  He also admitted that Ms. Ferrigan's position was approved in the budget for the fiscal year.  *Id*. at 114:11-22.

106.    On February 25, 2022, Complainant's counsel informed City Attorney Lynn Gelin that she intended to contest her unlawful termination.  The letter also put the City on notice that evidence that may be relevant to Ms. Ferrigan's claims should be preserved.  Ex. 12, email transmitting preservation letter ; Ex. 13, evidence preservation letter.

107.    Six days later, on March 3, 2022, the City rejected Ms. Ferrigan's application for the open Environmental Resources Compliance Manager position.  Ex. 14, Email from Human Resources.  The City failed to credit her extensive training and experience over twenty-eight years in environmental programs.  The City intentionally ignored her experience in its assessment of her application, which is contrary to its policy of considering experience in lieu of education requirements.  Ex. 1, Delray Beach (Oris), 47:8-25 – 48:1-3.  Mr. Hadjimiry, who knew Ms. Ferrigan's experience very well told Mr. Oris that she did not have the minimum qualifications and was not forwarded to him for consideration.  Ex. 1, Delray Beach (Oris), 48:16-25.

_____/s/Rachael Flanagan_____
Leslie M. Kroeger (Florida Bar: 989762)
Rachael Flanagan (Florida Bar: 1018544)
Cohen Milstein Sellers & Toll, PLLC
11780 US Highway Suite 500
Palm Beach Gardens, FL 33408
Telephone: (877) 515 7955
Fax: (561) 515 1401

Email: lkroeger@cohenmilstein.com
rflanagan@cohenmilstein.com
Richard E. Condit (pro hac vice)
Cleveland Lawrence III (pro hac vice)
C. Ezra Bronstein (pro hac vice)
Mehri & Skalet, PLLC
2000 K Street, NW, Suite 325
Washington, DC 20006
Tel.: (202) 822-5100/Fax: (202) 822-4997
Email: rcondit@findjustice.com
clawrence@findjustice.com
ebronstein@findjustice.com

## CERTIFICATE OF SERVICE

I, Rachael Flanagan, hereby certify that on February 23, 2023, I served the foregoing upon the below listed counsel for the Defendants via ECF:

> Daniel L. Abbott (Florida Bar: 767115)
> Brett J. Schneider (Florida Bar: 12443)
> Samantha Williams (Florida Bar: 107117)
> Weiss Serota Helfman Cole & Bierman
> 200 East Broward Blvd., Suite 1900
> Ft. Lauderdale, FL 33301
> Telephone: (954) 763-4242
> Fax: (954) 764-7770
> Email: dabbott@wsh-law.com
> bschneider@wsh-law.com
> ssoto@wsh-law.com

/s/Rachael Flanagan
Rachael Flanagan (Florida Bar: 1018544)
Cohen Milstein Sellers & Toll, PLLC
rflanagan@cohenmilstein.com
